Kevin Twidwell
Kaleva Law Offices
1911 S. Higgins Ave.
P.O. Box 9312
Missoula, MT 59807-9312
406.542.1300 (Office)
406.721.1046 (Fax)
ktwidwell@kalevalaw.com

Lacy H. Koonce III (*pro hac vice*)
Jaya Kasibhatla (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
212.489.8230 (Office)
212.489.8340 (Fax)
lancekoonce@dwt.com
jayakasibhatla@dwt.com

Attorneys for Defendants McDonald's
Corporation, Leo Burnett Company, Inc.,
and Publicis Groupe

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| T-4 CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MCDONALD'S CORPORATION, LEO BURNETT COMPANY, INC., PUBLICIS GROUPE, and DOES 1 through 10,<br><br>Defendants. | CV-17-08-M-DLC<br><br>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................iv

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...................................................................................3

    A.    McDonald's Has Used its Tagline "i'm lovin' it" Since 2003..........3

    B.    Plaintiff (Purportedly) First Uses "♥'N" After McDonald's Registers I'M LOVIN' IT Mark...........................................................4

    C.    The Instant Action ............................................................................5

I.      THE RELEVANT PLEADING STANDARD............................................7

II.    PLAINTIFF'S LANHAM ACT CLAIMS FAIL AS A MATTER OF LAW .......................................................................................................7

    A.    Plaintiff Cannot State A Claim for Trademark Infringement............8

    B.    Plaintiff Makes No Plausible Allegations of Likely Confusion Under the Sleekcraft Factors ........................................................................9

        1.    Plaintiff Fails to Plead Use On Similar Goods or Services ......10

        2.    The Marks Are Not Confusingly Similar .................................13

        3.    Plaintiff Fails to Plead Sufficient Facts Under The Remaining Sleekcraft Factors ....................................................................15

    C.    Plaintiff Pleads No Facts Establishing Its Mark Is Famous, As Needed to State A Claim for Trademark Dilution ..........................16

III.   PLAINTIFF FAILS TO ALLEGE COPYING OR SUBSTANTIAL SIMILARITY AS NEEDED TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT .................................................................................18

IV.   THE CIVIL CONSPIRACY CLAIM IS PATENTLY FRIVOLOUS AND MUST BE DISMISSED..........................................................................22

V.      THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS FOR
        UNFAIR COMPETITION AND CIVIL CONSPIRACY.........................23

VI.     THERE IS NO BASIS FOR EXERCISING PERSONAL JURISDICTION
        OVER PUBLICIS.......................................................................................23

CONCLUSION.................................................................................................27

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## Cases

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ...........................................................................8

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v.
   Walking Mountain Products*, 353 F.3d 792 (9th Cir. 2003) ....................*passim*

*Arica Inst., Inc. v. Palmer*,
   770 F. Supp. 188 (S.D.N.Y. 1991), *aff'd*, 970 F.2d 1067 (2d Cir. 1992)........19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................7

*Basile v. Twentieth Century Fox Film Corp.*,
   2014 WL 12521340 (C.D. Cal. Aug. 19, 2014) ...........................................3, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................7

*Benny v. Pipes*,
   799 F.2d 489 (9th Cir. 1986) .........................................................................24

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ...................................................................8, 10

*Capcom Co. v. MKR Grp.*,
   2008 WL 4661479 (N.D. Cal. 2008) ...............................................................6

*Citigroup Inc. v. Capital City Bank Grp., Inc.*,
   2010 WL 595586 (T.T.A.B. Feb. 17, 2010), *aff'd*, 637 F.3d 1344
   (Fed. Cir. 2011).............................................................................................17

*Delta Air Lines, Inc. v. Influence Direct, LLC*,
   117 U.S.P.Q.2d 1652 (M.D. Tenn. 2016).......................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991).................................................................................18, 19

*Felix the Cat Prods. v. New Line Cinema*,
    54 U.S.P.Q.2d 1856 (C.D. Cal. 2000) ............................................................12

*Glick v. Townsend*,
    2015 WL 1282039 (D. Mont. June 29, 2015).................................................23

*Herbalife Int'l, Inc. v. Lumene N. Am. LLC*,
    2007 WL 4225776 (C.D. Cal. Oct. 15, 2007).................................................13

*Hibbler v. Sewell*,
    2015 WL 1599660 (W.D. Wash. Apr. 9, 2015) ......................................11, 12

*Image Online Design v. Internet Corp. for Assigned Names & Numbers*,
    2013 WL 489899 (C.D. Cal. Feb. 7, 2013) ..........................................8, 10, 11

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
    657 F.2d 1059 (9th Cir. 1981) .......................................................................20

*Kanover v. Marks*,
    91 U.S.P.Q. 370 (S.D.N.Y. 1951)..................................................................19

*Lindy Pen Co. v. Bic Pen Corp.*,
    725 F.2d 1240 (9th Cir. 1984) .......................................................................13

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) ...................................................................8, 16

*Mattel v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) .........................................................................12

*McDonalds Corp. v. McSweet LLC*,
    2014 WL 5282256 (T.T.A.B. Sept. 29, 2014)................................................17

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986) ...........................................................................3

*Montana Camo, Inc. v. Cabela's, Inc.*,
    2011 WL 534006 (D. Mont. Feb. 15, 2011)...................................................18

*Montana Silversmiths, Inc. v. Taylor Brands, LLC*,
    850 F. Supp. 2d 1172 (D. Mont. 2012)...........................................................25

*Montana Trucks LLC v. UD Trucks N. Am., Inc.*,
    2016 WL 7388303 (D. Mont. Dec. 20, 2016) ....................................25, 26, 27

*Murray v. Cable Nat'l Broad. Co.*,
   86 F.3d 858 (9th Cir. 1996) ........................................................9, 10

*N. Coast Indus. v. Jason Maxwell, Inc.*,
   972 F.2d 1031 (9th Cir. 1992) ...........................................................20

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ......................................................17, 19

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ........................................................8, 13

*Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003) .20

*Nike, Inc. v. Nikepal Int'l, Inc.*,
   84 U.S.P.Q.2d 1820 (E.D. Cal. 2007)..............................................16

*Norm Thompson Outfitters, Inc. v. General Motors Corp.*,
   448 F.2d 1293 (9th Cir. 1971) ...........................................................13

*Paatalo v. J.P. Morgan Chase Bank, N.A.*,
   2011 WL 13130862 (D. Mont. May 18, 2011)...............................22

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ...........................................................16

*Parts.com, LLC v. Yahoo! Inc.*,
   996 F. Supp. 2d 933 (S.D. Cal. 2013)..............................................17

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) .............................................................9

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ............................................................20

*Schumacker v. Meridian Oil Co.*,
   288 Mont. 217 (1998)......................................................................22

*SEC v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ...........................................................24

*Signal Peak Energy, LLC v. E. Mont. Mins., Inc.*,
   922 F. Supp. 2d 1142 (D. Mont. 2013)............................................22

*Smith v. George E. Muehlebach Brewing Co.*,
140 F. Supp. 729 (S.D. Mo. 1956)....................................................................19

*Taylor v. Portland Paramount Corp.*,
383 F.2d 634 (9th Cir. 1967) ..........................................................................24

*Toho Co. v. Sears, Roebuck & Co.*,
645 F.2d 788 (9th Cir. 1981) ..........................................................................10

*Toulmin v. Rike-Kumler Co.*,
137 U.S.P.Q. 533 (S.D. Ohio 1962), *aff'd*, 316 F.2d 232 (6th Cir. 1963).......20

*United States v. Hamilton*,
583 F.2d 448 (9th Cir. 1978) ..........................................................................19

*Urban Home, Inc. v. Cordillera Inv. Co.*,
2014 WL 3704031 (C.D. Cal. June 19, 2014) ................................................17

*Vallavista Corp. v. Amazon.com, Inc.*,
657 F. Supp. 2d 1132 (N.D. Cal. 2008) ............................................................8

*Vault Corp. v. Quaid Software Ltd.*,
847 F.2d 255 (5th Cir. 1988) ..........................................................................20

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
590 F. Supp. 2d 1306 (D. Nev. 2008), *aff'd*, 610 F.3d 1088 (9th Cir. 2010) ..16

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................21

**Federal Statutes**

15 U.S.C.
§§ 1051–1129 ("Lanham Act") .......................................................7, 8, 13, 18
§ 1114 .....................................................................................................2, 7
§ 1125 .....................................................................................................2, 8
§ 1125(a)........................................................................................................7
§ 1125(c)...........................................................................................2, 8, 16
§ 1125(c)(2)(A)............................................................................................16
§ 1125(c)(2)(A)(i)-(iv)..................................................................................17
§ 1125(d)......................................................................................................18

17 U.S.C. § 106................................................................................................18

**State Statutes**

Montana State Unfair Business Practice-Montana Consumer Protection Act,
MCA, Title 30, *et seq.* ...................................................................................23

**Rules**

Federal Rule of Civil Procedure
4 ...........................................................................................................................24
12(b)(2) .......................................................................................................1, 24, 27
12(b)(6) ................................................................................................................1, 7

Montana Rule of Civil Procedure
4(b)..................................................................................................................25, 26
4(b)(1) .................................................................................................................25

**Other Authorities**

1 McCarthy on Trademarks § 7:34 ..............................................................10

1 Nimmer on Copyright § 2.01 ........................................................................19

Defendants McDonald's Corporation ("McDonald's"), Leo Burnett Company, Inc. ("Burnett"), and Publicis Groupe ("Publicis") respectfully move to dismiss the complaint of Plaintiff T-4 Corporation ("T-4") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and pursuant to Rule 12(b)(2) for lack of personal jurisdiction over Publicis.

## PRELIMINARY STATEMENT

The key question in a claim for trademark infringement is whether a consumer, upon encountering the allegedly infringing use of a mark, is likely to be confused as to the source of goods or services on which that mark appears.  As courts have observed, "'[w]hether likelihood of confusion is more a question of law or one of fact depends on the circumstances of each particular case,'" and it is the rare case in which goods and/or services are so unrelated that there can be no possibility of confusion.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 347 (9th Cir. 1979) (citation omitted), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Products*, 353 F.3d 792 (9th Cir. 2003).  **This, however, is precisely that rare case.**

Plaintiff, which purportedly sells paper goods and personal care products, alleges that Defendants infringed its ♥'n and ♥'N marks through a campaign

promoting McDonald's restaurant services using the phrase "i paid with lovin.'"[1]

Plaintiff does not and cannot allege that its paper goods or personal care goods are

in any way related to or compete with McDonald's restaurant services or food

products.  Where, as here, "the goods are totally unrelated, **there can be no**

**infringement** because confusion is unlikely."  *Sleekcraft,* 599 F.2d at 348

(emphasis added).

Plaintiff's Complaint must be dismissed for the following independent

reasons.  **First,** Plaintiff fails to state an infringement claim under §§ 1114 and

1125 of the Lanham Act, as it is undisputed that Plaintiff's goods and Defendants'

goods and services are unrelated, and Plaintiff has pled no plausible facts

suggesting a likelihood of confusion.  **Second**, Plaintiff's claim for trademark

dilution pursuant to § 1125(c) must fail because Plaintiff has not and cannot plead

that its marks enjoy the level of fame needed to state a dilution claim.  **Third**,

Plaintiff's copyright claim fails because Plaintiff cannot protect an unoriginal

three-character symbol in a book, any purported copying was *de minimis*, and the

alleged works are not substantially similar on their face.  **Fourth**, Plaintiff's failure

to state a claim for federal trademark or copyright infringement mandates dismissal

of its state law claims for unfair competition and civil conspiracy.  **Fifth,** Plaintiff's

conspiracy claim fails because Plaintiff has failed to plead any facts establishing

---

[1] *See* Complaint, Ex. A to Declaration of Lacy H. Koonce, III ("Koonce Decl."), dated Mar. 30, 2017.

that Defendants agreed to commit an unlawful act.  Finally, all of Plaintiff's claims

against Defendant Publicis must be dismissed, as Publicis is not subject to personal

jurisdiction in Montana.

## STATEMENT OF FACTS

### A. McDonald's Has Used its Tagline "i'm lovin' it" Since 2003

McDonald's, one of the most widely-known global brands, began using the

phrase "i'm lovin' it" in nationwide advertising campaigns in 2003.[2]  Koonce Decl.

¶ 3, Ex. B.  McDonald's filed to register the phrase as a service mark on June 2,

2003, and registration was granted on July 26, 2005.  *Id.*  Federal Registration No.

2,978,887 for the I'M LOVIN' IT mark indicates that (1) it is used in connection

with "restaurant services" (International Class 43) and (2) was first used in

interstate commerce by McDonald's on September 23, 2003.  *Id.*  McDonald's has

additional registrations for the I'M LOVIN' IT mark in International Classes 29,

30 and 32 for food and drink products.  Koonce Decl. ¶ 4, Ex. C (Registration Nos.

2978888, 2978889, and 3104640).  McDonald's I'M LOVIN' IT trademarks are

incontestable.  Koonce Decl. ¶¶ 3-4, Exs. B, C.

---

[2] This Court may take judicial notice of public records, such as federal trademark and copyright registrations.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Basile v. Twentieth Century Fox Film Corp.*, 2014 WL 12521340, at *1 (C.D. Cal. Aug. 19, 2014).

### B. Plaintiff (Purportedly) First Uses "♥'N" After McDonald's Registers I'M LOVIN' IT Mark

Plaintiff T-4 never alleges the type of business it conducts, or the types of goods on which its purported mark ("♥'N")[3] appears, making it impossible to discern if or how the mark identifies T-4 as the source of a particular good or service, or how "♥'N" is a famous mark capable of being diluted. Plaintiff alleges it registered the lowercase mark ("♥'n") in 2007 and the uppercase Mark ("♥'N") in 2013, and that the marks "represent the word "Lov'n" or "Lovin."" Compl. ¶ 4.3. Both of Plaintiff's marks were registered for use on goods, not services – the "♥'n" mark was registered for paper goods and clothing (including stickers, greeting cards, and shirts), and the "♥'N" mark for use on personal care and cleaning products (including body wash, lotion, and floor polish). Koonce Decl. Exs. D, E. The registrations state that the marks were first used in commerce in 2006 and 2011, respectively. *Id.* It is thus undisputed that Plaintiff did not begin to use its marks until several years *after* McDonald's first used and registered I'M LOVIN' IT.

Plaintiff also claims ownership of a federal copyright registration, No. TXu001347097 (Compl. ¶ 4.4). That registration is for a book entitled "The Lov'n Book for those who do" (the "Book"). Koonce Decl. Ex. F. Although Plaintiff has

---

[3] Although Plaintiff mentions the lowercase "♥'n" mark in its Complaint (¶ 4.3), Plaintiff only alleges that its uppercase "♥'N" mark was infringed. *See* Koonce Decl. Ex. A ¶¶ 4.6–4.13; 5.2–5.3; 6.2; 7.2–7.3; 8.2; 9.2; 10.2; 10.4.

chosen not to attach a copy of the Book to its Complaint, it submitted pages of the

Book as a specimen in support of its statements of trademark use in the U.S. Patent

& Trademark Office:



Koonce Decl. Ex. G.

### C. The Instant Action

Plaintiff's claims relate to an advertising campaign entitled "McDonald's

Pay With Lovin' Instant Win Game" (the "Campaign")[4] which it says ran for less

than two weeks in 2015, ending on Valentine's Day.  Compl. ¶¶ 4.5–4.7.  Despite

the fact that the title of the Campaign begins with the word "McDonald's" and

builds on McDonald's' longstanding use of the word "lovin,'" Plaintiff alleges that

Burnett "counterfeited and appropriated" Plaintiff's "♥'N" mark by creating and

selling the campaign to McDonald's.  *Id.*  Plaintiff then alleges that McDonald's

infringed its mark by promoting the Campaign in a television commercial during

---

[4] The correct title of the Campaign is "McDonald's Pay with Lovin.'"  *See* Declaration of Jennifer Cacioppo ("Cacioppo Decl."), dated Mar. 29, 2017, ¶ 3.

the Super Bowl[5] and on social media, and diluted the mark by "humiliating" restaurant customers because, during the Campaign, managers at participating McDonald's restaurants would give customers free meals for engaging in a "Lovin' Act" such as "calling a loved one" or "blowing a kiss." *Id.* ¶¶ 4.6–4.11.

As a minor part of the Campaign, after the customer completed the "Lovin' Act," a McDonald's employee in the store would put a small, free sticker on the customer's clothing  bearing the phrase "i paid with lovin'" in which the word "lovin'" is abbreviated as a heart followed by an apostrophe and the letter "N." Compl. ¶ 4.6.  Notably, these stickers also prominently include McDonald's' iconic Golden Arches logo:



Koonce Decl. Ex. I.  This sticker appears to be the primary basis upon which Plaintiff alleges that consumers would have been confused into believing there was some connection between McDonald's' restaurant services and food products, and Plaintiff's personal care and paper goods.

---

[5] Although Plaintiff chose not to attach examples of the commercial or stickers, on a motion to dismiss, the court may consider documents on which the complaint necessarily relies, even if not attached.  *See, e.g.*, *Basile*, 2014 WL 12521340, at *1 (claims for trademark and copyright infringement necessarily relied on allegedly infringing script and DVDs); *Capcom Co. v. MKR Grp.*, 2008 WL 4661479, at *3–4 (N.D. Cal. 2008) (examining allegedly infringing video game).

## I.      THE RELEVANT PLEADING STANDARD

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  Although a

court must take the well-pleaded factual allegations as true, legal conclusions "are

not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009).  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Id.* at 678.  A complaint cannot

survive where "it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'"  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Instead, a plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face," rather than merely possible.  *Twombly*, 550 U.S. at 570;

*Iqbal*, 556 U.S. at 695–96.  Where plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed."

*Twombly*, 550 U.S. at 570.

## II.     PLAINTIFF'S LANHAM ACT CLAIMS FAIL AS A MATTER OF LAW

Plaintiff fails to plead facts sufficient to state a claim for <u>any</u> of its causes of

action under the Lanham Act, 15 U.S.C. §§ 1051–1129.  Since Plaintiff pleads no

facts to establish that the goods or services at issue here are related or similar, and

no facts suggesting a likelihood of confusion resulting from Defendants' alleged

use of its mark, it cannot state a claim for infringement of a registered trademark

under 15 U.S.C. § 1114, or for infringement of a common law mark under 15

U.S.C. § 1125(a).  Further, Plaintiff has failed to plead that its mark has the requisite level of fame to state a claim for dilution.  15 U.S.C. § 1125(c).  Since Plaintiff's goods are, as alleged, wholly unrelated to the restaurant services and food products offered by McDonald's, there is no set of facts under which Plaintiff could amend the Complaint to cure these deficiencies.  Accordingly, all of Plaintiff's federal trademark claims and related state law claims should be dismissed with prejudice.

### A. Plaintiff Cannot State A Claim for Trademark Infringement

The elements of a claim for infringement are the same under § 1114 or § 1125 of the Lanham Act.  *See, e.g.*, *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999); *Vallavista Corp. v. Amazon.com, Inc.*, 657 F. Supp. 2d 1132, 1136 (N.D. Cal. 2008).  To state a claim, a plaintiff must allege facts showing that it has (1) a protectable ownership interest in the mark; and (2) that defendant's use of the mark is likely to cause consumer confusion.  *See Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (citing *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).[6]  "[T]he *sine qua non* of trademark infringement is consumer confusion."  *Network Automation, Inc.*

---

[6] "The burden of proving likelihood of confusion [that is, infringement] remains on the party charging infringement even when relying on an incontestable registration." *Image Online Design v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 489899, at *6 (C.D. Cal. Feb. 7, 2013) (quoting *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1081 n.6 (9th Cir. 2005)).

*v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1142 (9th Cir. 2011).  In the Ninth

Circuit, the consumer confusion inquiry focuses on whether a reasonably prudent

consumer is likely to be confused "'as to the origin of the good or service bearing

one of the marks.'" *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1214

(9th Cir. 2012) (citation omitted).  The plaintiff bears the burden of pleading facts

sufficient to show that a likelihood of confusion is "'probable, not simply a

possibility.'"  *Murray v. Cable Nat'l Broad. Co*., 86 F.3d 858, 861 (9th Cir. 1996)

(citation omitted).

### B. Plaintiff Makes No Plausible Allegations of Likely Confusion Under the *Sleekcraft* Factors

Courts in the Ninth Circuit determine whether a likelihood of confusion

exists between goods and services by examining eight factors: (1) the strength of

the allegedly infringed mark; (2) proximity of the goods; (3) similarity of the

marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of

goods, and the degree of care likely to be exercised by the purchaser; (7)

defendant's intent in selecting the mark; and (8) likelihood of expansion of the

product lines.  *Sleekcraft*, 599 F.2d at 348–49.  Related goods are "'products which

would be reasonably thought by the buying public to come from the same source if

sold under the same mark.'"  *Id.* at 348 n.10 (citation omitted).

### 1.      Plaintiff Fails to Plead Use On Similar Goods or Services

Where the goods and services of a plaintiff and those of a Defendant are

**wholly unrelated**, there can be no likelihood of confusion.  *See, e.g.*, *Sleekcraft*,

599 F.2d at 348 ("If the goods are totally unrelated, there can be no infringement

because confusion is unlikely"); *Brookfield*, 174 F.3d at 1055–56.  Thus, where the

nature of the goods and services at issue is not in dispute,[7] but are wholly

unrelated, courts find there is no likelihood of confusion as a matter of law.  *See*

*Toho Co.*, 645 F.2d at 790–91 (upholding dismissal on basis that no confusion

likely where plaintiff sold literary works and toys and defendant sold garbage

bags); *Murray*, 86 F.3d at 861 (affirming dismissal since no confusion was likely

between consumer survey service and cable TV network); *Image Online*, 2013 WL

489899, at *6 (no confusion likely where plaintiff sold mousepads and backpacks,

and defendant provided service for domain name registration).[8]

Here, Plaintiff pleads no facts to support a plausible claim for likelihood of

confusion.  Since Plaintiff fails to allege even the types of goods or services on

which its mark appears, it cannot establish that confusion is even possible, let alone

---

[7] If the nature of the goods or services is undisputed, the relatedness of those goods or services may be determined as a matter of law.  *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981) (citing *Williams Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 190–93 (9th Cir. 1975)).
[8] Because Plaintiff's mark is composed primarily of a commonly used heart shape, the mark is entitled at best only to a narrow scope of protection.  "[S]imple geometric shapes, even if given protection, are accorded a narrow scope of trademark or trade dress protection, both as to scope of product and to variation in design.  Thus, such marks are said to be relatively 'weak.'"  1 McCarthy on Trademarks § 7:34.  For a weak mark, infringement can only be found if "the marks [at issue] are quite similar, and the goods closely related."  *Sleekcraft*, 599 F.2d at 350.

plausible, which is plainly insufficient to state a claim under *Twombly* and *Iqbal*. *See, e.g.*, *Hibbler v. Sewell*, 2015 WL 1599660, at *2 (W.D. Wash. Apr. 9, 2015) (granting dismissal where "[plaintiff] alleged no facts from which the Court can infer it is plausible that the goods and/or services offered by Defendants are similar to the goods and/ or services that [plaintiff] promotes or offers under [her] mark."). Plaintiff pleads only the conclusory statement that "Plaintiff has continuously used [its] mark in conjunction with its ongoing efforts to promote and use the mark for its own gain and benefit."  Compl. ¶ 4.3.  Although Plaintiff acknowledges, as it must, that McDonald's provides restaurant services (Compl. ¶¶ 4.6, 4.9), it does not allege that its own marks are used in conjunction with restaurant services or related goods such as food and drink products, and fails to allege that the respective goods and/or services are in any way competitive.  Indeed, Plaintiff may have chosen to omit this information because, as its registration shows, the "♥'N" mark is registered for use on personal care and cleaning products – goods indisputably unrelated to McDonald's restaurant services and related products.  *See* Koonce Decl. Exs. D, E.

Plaintiff's repeated and conclusory allegations that Defendants' alleged uses were likely to cause confusion, without more, are insufficient to state a claim for infringement or false designation of origin.  *See, e.g.*, *Image Online*, 2013 WL 489899, at *6 (plaintiff's conclusory allegation that defendants services were

"likely to cause confusion" failed to state claim for trademark infringement);

*Hibbler*, 2015 WL 1599660, at *2 (bare allegation that defendant's use "likely to cause, and has caused, confusion" fails to state claim for trademark infringement). Since Plaintiff has pled no facts supporting even a likelihood of confusion, the Court should dismiss the trademark infringement claims on this basis alone.

Finally, Plaintiff's claims regarding Defendant Burnett fail entirely, because it has not plausibly pled any use of the alleged trademark by Burnett at all.  As the Ninth Circuit has explained, a "trademark is a word, phrase or symbol that is used to identify a manufacturer or sponsor of a good or the provider of a service." *Mattel v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002).  A defendant must use the plaintiff's mark "to identify or distinguish" the defendant's goods or services; otherwise the "use is not actionable under trademark law."  *Felix the Cat Prods. v. New Line Cinema*, 54 U.S.P.Q.2d 1856, 1858 (C.D. Cal. 2000).  On the face of the Complaint, it is clear that Burnett acted as an advertising agency for its client McDonald's and came up with a creative advertising campaign featuring a twist ("Pay with Lovin'") on McDonald's longstanding trademark I'M LOVIN' IT. Plaintiff does not allege – nor could it – that Burnett "used" Plaintiff's mark to identify ***itself*** as the source of a good or service that it sold to McDonald's or anyone else.  Nor does Plaintiff allege any confusion on the part of Burnett's client, McDonald's – or anyone else – as a result of such "use."

For all of the above reasons, Defendants have not engaged in a "use" of the mark likely to confuse within the meaning of the Lanham Act, and cannot be liable for infringement.

## 2. The Marks Are Not Confusingly Similar

Courts analyze the similarity between marks "in terms of [their] sight, sound and meaning." *Network Automation*, 638 F.3d at 1150. The similarity of the marks "must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase of [the products]." *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984); *Sleekcraft*, 599 F.2d at 351. Where the name of a company or its logo is displayed in connection with an allegedly infringing use of a mark, confusion is not likely. *See, e.g.*, *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where "the name of the company invariably accompanied the [trademarked] slogan"); *Herbalife Int'l, Inc. v. Lumene N. Am. LLC*, 2007 WL 4225776, at *7–8 (C.D. Cal. Oct. 15, 2007) (presence of alleged infringer's logo or housemark undercut claimed similarity of marks).

Plaintiff alleges that McDonald's "engaged in direct and in-person customer contact in its restaurants with stickers bearing Plaintiff's "♥'N" trademark." Compl. ¶ 4.6. Even assuming *arguendo* that McDonald's used Plaintiff's mark

(instead of abbreviating part of its own trademarked phrase in a decidedly non-trademark use), consumers only encountered such use *inside* McDonald's restaurants, which *only sell* McDonald's goods and services.[9]  Plaintiff further alleges that the stickers here were given away, not sold.  Compl. ¶¶ 4.6, 4.9.  The stickers prominently display McDonald's iconic Golden Arches logo along with the phrase "i paid with lovin'" (in which the final word is abbreviated as noted).  Koonce Decl. Ex. I.  No customer encountering a free sticker bearing the McDonald's logo inside of a McDonald's restaurant, in connection with the promotion of McDonald's restaurant services, would find the use of the abbreviation of "lovin'" on that sticker to be confusingly similar to Plaintiff's mark.

Further, the Campaign's title instantly dispels any confusion as to source, since it is called the "**McDonald's** Pay With Lovin' Instant Win Game."  Compl. ¶ 4.6.  In the title, the word "Lovin'' does not identify the source of a service or product, but functions as part of a phrase, just as it does on the sticker.  Compl. ¶ 4.6.  Plaintiff fails to plausibly allege that consumers would be confused as to the source of the Campaign.  Finally, with respect to Defendant Burnett, Plaintiff has

---

[9] Although Plaintiff also references a Superbowl commercial in the Complaint, that commercial simply does not display the purported ♥'N mark at any point.  Koonce Decl. Ex. H.

not and cannot allege that McDonald's was confused as to the source of the

Campaign, created for it by Burnett.

### 3. Plaintiff Fails to Plead Sufficient Facts Under The Remaining *Sleekcraft* Factors

Plaintiff fares no better with respect to the remaining *Sleekcraft* factors

needed to support a finding of a likelihood of confusion.  Regarding the second

factor, proximity, courts have found that goods are proximate if "the goods are

similar in use and function," *Sleekcraft*, 599 F.2d at 350, which Plaintiff cannot

demonstrate for all of the reasons previously stated.

Plaintiff's own allegations establish that T-4 and Defendants do not overlap

in their use of marketing channels, the fifth *Sleekcraft* factor.  Plaintiff alleges that

McDonald's engages in national television advertising and promotional events in

its own restaurants (Compl. ¶ 4.6), yet fails to plead any facts regarding the

marketing of its products through ***any*** channels.  Further, based on the nature of the

goods set forth in Plaintiff's trademark filings, it is unlikely that Plaintiff provides

goods or services through restaurants, using similar sales methods, or price ranges.

*Sleekcraft*, 599 F.2d at 353.

As to the seventh factor, defendant's intent in using the mark, Plaintiff fails

to allege any facts (as opposed to bare allegations) suggesting that Defendants

"knowingly adopted" its marks, rather than simply using McDonald's' existing

mark for the phrase "i'm lovin' it."  Moreover, Defendant McDonald's registered

I'M LOVIN' IT years before Plaintiff used and registered the marks that it claims were infringed.  Finally, in order for the eighth *Sleekcraft* factor (likelihood of expansion of the product lines) to weigh in Plaintiff's favor, "there is a need for 'a *strong* possibility of expansion into competing markets.'"  *M2 Software*, 421 F.3d at 1085 (citation omitted).  Plaintiff pleads no facts suggesting any possibility that it will expand into the provision of restaurant services (or creation of advertising campaigns).

### C. Plaintiff Pleads No Facts Establishing Its Mark Is Famous, As Needed to State A Claim for Trademark Dilution

To state a claim for trademark dilution under 15 U.S.C. § 1125(c), a plaintiff must show that: (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998)).  A mark is famous within the meaning of the statute if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).  Examples of famous marks include DELTA[10] (for airlines), NIKE[11] (for athletic footwear and apparel), VISA[12] (for credit card services),

---

[10] *Delta Air Lines, Inc. v. Influence Direct, LLC*, 117 U.S.P.Q.2d 1652 (M.D. Tenn. 2016).
[11] *Nike, Inc. v. Nikepal Int'l, Inc.*, 84 U.S.P.Q.2d 1820 (E.D. Cal. 2007).
[12] *Visa Int'l Serv. Ass'n v. JSL Corp.*, 590 F. Supp. 2d 1306 (D. Nev. 2008), *aff'd*, 610 F.3d 1088 (9th Cir. 2010).

CITIBANK[13] (for banking services), and of course MCDONALD'S[14] (for restaurants and food).  To determine whether a mark is famous, a court may consider (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) whether the mark is registered."  Section 1125(c)(2)(A)(i)-(iv); *Parts.com, LLC v. Yahoo! Inc*., 996 F. Supp. 2d 933, 940 (S.D. Cal. 2013).

Here, Plaintiff has failed to allege any facts to support the claim that its mark is "widely recognized by the general consuming public."  Plaintiff has only made the conclusory allegations that the mark "is famous within the meaning of the statute."  Compl. ¶¶ 4.12, 7.2.  This is plainly insufficient under the law.  *See, e.g.*, *Parts.com*, 996 F. Supp. 2d at 941 (dismissing for failure to state a claim where "[p]laintiff has alleged nothing in its Complaint suggesting that the general consuming public recognizes the Parts.com mark," absent conclusory allegations of money spent on marketing and developing goodwill and brand recognition); *Urban Home, Inc. v. Cordillera Inv. Co.*, 2014 WL 3704031, at *6 (C.D. Cal. June 19, 2014) (plaintiff failed to state a claim for dilution where complaint made no

---

[13] *Citigroup Inc. v. Capital City Bank Grp., Inc*., 2010 WL 595586, at * 14 (T.T.A.B. Feb. 17, 2010), *aff'd*, 637 F.3d 1344, (Fed. Cir. 2011).
[14] *McDonalds Corp. v. McSweet LLC*, 2014 WL 5282256, at *11 (T.T.A.B. Sept. 29, 2014).

allegations to support claim that mark was "widely recognized" throughout the

U.S.).  Accordingly, Plaintiff's claim for dilution must be dismissed.

III.   **PLAINTIFF FAILS TO ALLEGE COPYING OR SUBSTANTIAL
       SIMILARITY AS NEEDED TO STATE A CLAIM FOR COPYRIGHT
       INFRINGEMENT**

Plaintiff's Fourth Claim for Relief, mislabeled as "Violation of 15 USC

1125(d)," appears to be a claim for copyright infringement under 17 U.S.C. § 106.

To state a claim for copyright infringement, a plaintiff must allege (1) ownership

of a valid copyright, and (2) copying of constituent elements of the work that are

original.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991);

*Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989); *Montana Camo, Inc. v.

Cabela's, Inc.*, 2011 WL 534006, at *3 (D. Mont. Feb. 15, 2011).

With respect to the first element, ownership of a valid copyright, the

Complaint alleges that "Plaintiff's trademark described above has also been

copyrighted in the United States Copyright Office."  Compl. ¶ 8.2.  It later alleges

that "Plaintiff owns the ♥'N copyright, no. TXu001347097, registered with the

United States Copyright Office, depicting Plaintiff's extensive and diverse

applications."  These allegations appear to conflate the Copyright Act and the

Lanham Act, since "depicting" trademark "applications" in a copyright registration

has no legal effect whatsoever.  Plaintiff merely has a registration for its Book as a

whole – it has not registered any heart-apostrophe-N design independently.

To the extent that what Plaintiff means is that it has a copyright for the three-character symbols it claims as trademarks ("♥'N" and "♥'n"), *in any form*, Plaintiff is mistaken. The concept of a heart followed by an apostrophe-N is no more than an uncopyrightable idea, and it is hornbook copyright law that single words, short phrases, and familiar symbols or designs cannot be copyrighted.  *See*, *e.g.*, 1 NIMMER ON COPYRIGHT § 2.01; *see also Arica Inst., Inc. v. Palmer*, 770 F. Supp. 188, 191–92 (S.D.N.Y. 1991), *aff'd*, 970 F.2d 1067 (2d Cir. 1992).  *Narell*, 872 F.2d at 911 ("Phrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection."); *Kanover v. Marks*, 91 U.S.P.Q. 370 (S.D.N.Y. 1951) (no infringement possible where plaintiff's work is not original enough to be "susceptible of copyright protection"); *Smith v. George E. Muehlebach Brewing Co.*, 140 F. Supp. 729, 732 (S.D. Mo. 1956) (finding lack of originality in phrase "Tic Toc").

At most, Plaintiff might be able to protect its particular *expression* of that idea as it appears in the Book.  However, originality is the *sine qua non* of copyrightability, *see Feist*, 499 U.S. at 348, and here there appears to be nothing at all original about the design of the red heart, or the fonts used for the apostrophe and "N," as they appear in the Book.  *See United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ("Trivial elements of compilation and arrangement . . . are not

copyrightable since they fall below the threshold of originality."). Even assuming some minimal amount of creativity here, however, any copyright protection would be exceedingly thin. *Satava v. Lowry,* 323 F.3d 805, 812 (9th Cir. 2003) (where originality is thin, only "virtually identical copying" will infringe).

Most importantly, Plaintiff has not sufficiently pled infringement. A plaintiff establishes infringement by showing that defendant copied its work. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981). A "plaintiff must establish infringement by showing both access to its copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged infringing work." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992)). Plaintiff has failed to even plead that Defendants had access to Plaintiff's book, and does not allege that its book has ever been published or made available for purchase, or how Defendants could have acquired access to it.

This claim also fails because any purported copying is entirely *de minimis*. *See Newton v. Diamond*, 204 F. Supp. 2d 1244, 1256–57 (C.D. Cal. 2002) (purported copying of three-note music sequence *de minimis*), *aff'd*, 349 F.3d 591 (9th Cir. 2003); *Toulmin v. Rike-Kumler Co.*, 137 U.S.P.Q. 533 (S.D. Ohio 1962) (copying of sentence and a half from 142-page book held *de minimis*), *aff'd*, 316 F.2d 232 (6th Cir. 1963); *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 267

(5th Cir. 1988) (copying 30 characters out of 50 pages of source code held *de minimis*).

Finally, the allegedly infringing work of Defendants, as shown in the free sticker, on its face, is not substantially similar – much less "virtually identical" – to any of the designs of the heart-apostrophe-N symbol that appear in Plaintiff's Book:[15]



**McDonald's Sticker**



**Plaintiff's Book**

The hearts are shaped differently, the apostrophes are different, and the fonts used for the "N" are different.  Again, the only similarity between the respective uses is the underlying, unprotectable combination of three common symbols, not in the expression of that idea.

---

[15] A court may compare allegedly similar works referenced in a complaint on a motion to dismiss.  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130–33 (C.D. Cal. 2007) (collecting cases).

In light of the abject failure to adequately plead any of the required elements of copyright infringement, Plaintiff's claim should be dismissed.

## IV. THE CIVIL CONSPIRACY CLAIM IS PATENTLY FRIVOLOUS AND MUST BE DISMISSED

Under Montana law, a plaintiff must establish the following elements to state a claim for civil conspiracy: (1) the existence of two or more persons; (2) with an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Schumacker v. Meridian Oil Co.*, 288 Mont. 217, 221–22 (1998). Plaintiff's conclusory allegations that Defendants" entered into a civil conspiracy to unlawfully and unfairly misappropriate Plaintiff's "♥'N" trademark" are insufficient to establish "a meeting of minds" between Defendants to accomplish the underlying tort. *See, e.g.*, *Signal Peak Energy, LLC v. E. Mont. Mins., Inc.*, 922 F. Supp. 2d 1142, 1153 (D. Mont. 2013) (dismissing civil conspiracy claim based on conclusory allegations, as court could not infer more than mere possibility that defendants conspired to cheat plaintiff); *Paatalo v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 13130862, at *9 (D. Mont. May 18, 2011) (dismissing conspiracy claim where plaintiff did no more than allege existence of an agreement, but failed to plead facts "pointing toward a meeting of the minds" between alleged co-conspirators). Further, as explained previously, Plaintiff has

utterly failed to sufficiently plead the underlying torts of copyright and trademark infringement.

## V.      THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS FOR UNFAIR COMPETITION AND CIVIL CONSPIRACY

Plaintiff alleges that Defendants have violated the "Montana State Unfair Business Practice-Montana Consumer Protection Act, MCA, Title 30, et seq." Compl. ¶ 9.2.  Although Plaintiff does <u>not</u> allege which section of the statute (if any) Defendants may have violated, the claim is clearly duplicative of its federal trademark claims.  Since Plaintiff has failed to state a claim for any cause of action under the Lanham Act, this Court should decline to exercise jurisdiction over the remaining state law claims, and dismiss them.  *See Glick v. Townsend*, 2015 WL 1282039, at *4 (D. Mont. June 29, 2015) (citing *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## VI.     THERE IS NO BASIS FOR EXERCISING PERSONAL JURISDICTION OVER PUBLICIS

Publicis has not yet been served with process in this action; indeed, it does not appear that Plaintiff has even attempted to comply with the requirements of

Rule 4.[16]  Publicis makes a limited appearance here only to contest personal jurisdiction and move to dismiss the Complaint.

Other than in the caption, Publicis is mentioned precisely once in the Complaint, in Paragraph 1.3, where Plaintiff alleges upon information and belief that Publicis is a corporation "doing business throughout the United States and elsewhere" and that it is "a parent organization of Burnett."  On the face of these allegations, Plaintiff cannot establish jurisdiction.

"[T]he party asserting jurisdiction has the burden of establishing it if his allegations are challenged in any appropriate manner."  *Taylor v. Portland Paramount Corp*., 383 F.2d 634, 639 (9th Cir. 1967).  Further, the "mere allegations of [a] complaint, when contradicted by affidavits, are [not] enough to confer personal jurisdiction" over a nonresident defendant.  *Id.*  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) may be supported by affidavit, and a court may not accept the truth of allegations in a pleading that are contradicted by an affidavit.  *Id.*  Here, we submit the Cacioppo Declaration, dated March 29, 2017, in support of Publicis' motion to dismiss.

---

[16] The Ninth Circuit has held that "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4."  *SEC v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)); *Benny* at 492 ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4."). A party's "failure even to attempt to comply with Rule 4 is no 'minor defect' that can be remedied by actual notice." *Ross* at 1140.

In the absence of a federal statute governing personal jurisdiction, a federal court applies state law to determine the bounds of jurisdiction, and Montana Rule of Civil Procedure 4(b)(1) functions as the state's long-arm statute. *Montana Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1181 (D. Mont. 2012) (citing *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 578-79 (9th Cir. 2011)).  Rule 4(b)(1) "'permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process.'" *Montana Trucks LLC v. UD Trucks N. Am., Inc.*, 2016 WL 7388303, at *2 (D. Mont. Dec. 20, 2016) (citation omitted).  Under 4(b)(1), "any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent" of any of a list of seven enumerated activities, including transaction of any business within Montana and the commission of any act resulting in accrual within Montana of a tort action.

Here, Plaintiff has not alleged – and cannot allege – any acts whatsoever on the part of Publicis.  There are no plausible allegations that Publicis, a French company, transacts any business in Montana, engaged in any act that would result in accrual of a tort in the state, or engaged in any other acts enumerated in Montana Rule 4(b).  The Declaration submitted by Jennifer Cacioppo also confirms as a factual matter that Publicis was not involved in any way with the purported acts of

Burnett or McDonald's as alleged in the Complaint.  Cacioppo Decl. ¶¶ 3, 5-7.
Therefore, there is no basis for exercise of jurisdiction under Montana Rule 4(b).

Plaintiff also fails to plead any facts to suggest that Publicis is an alter-ego
of Burnett or that Burnett is the agent of Publicis, nor could it.  Plaintiffs seeking to
pierce the corporate veil to establish personal jurisdiction over a foreign parent
company under Rule 4(b) face a demanding standard under Montana law.  First,
the parent company must be a mere "alter ego" or "agent" of the subsidiary, and
second, the corporate entity must have been used as a "'subterfuge to defeat public
convenience, justify wrong or perpetuate fraud.'"  *Montana Trucks*, 2016 WL
7388303, at *2 (citation omitted).  A company is an "alter-ego" of another only
when "'the corporate affairs of both are so intertwined that, in effect, each no
longer has a separate identity.'"  *Id.* at *3 (citation omitted).  Montana courts
employ a fourteen factor test to determine alter ego status, and no single factor is
dispositive – among the important are (1) whether the shareholder owns all or a
majority of the corporation's stock, and (2) whether the shareholder is a director
and/or president of the corporation.  *Id.* at *3.  To establish agency, the showing is
similarly demanding – "'[a] subsidiary corporation may be the mere agent of a
parent company for a particular transaction if the parent company exercises control
over the conduct and activities of the subsidiary so that in effect the subsidiary is
merely acting on behalf of the parent.'"  *Id*. (citation omitted).  The Declaration of

Jennifer Cacioppo further confirms that no such facts exist here that would warrant treating Publicis as an alter ego of Burnett or Burnett as an agent of Publicis.

Since Plaintiff has pled no facts regarding Publicis, and the facts as set forth in the Cacioppo Declaration contradict Plaintiff's bare allegations of jurisdiction, Plaintiff cannot establish either alter ego or agency status needed for the exercise of jurisdiction to be proper under Montana law.  *Montana Trucks*, 2016 WL 7388303, at *3 (Japanese company's distributor agreement with U.S. subsidiary did not render parent company the "alter ego" or agent" of the subsidiary needed to establish personal jurisdiction).  Accordingly, the Court should dismiss all claims against Defendant Publicis pursuant to Rule 12(b)(2).

## CONCLUSION

For the reasons set forth herein, defendants respectfully request that the Complaint be dismissed with prejudice.

///

///

///

///

///

///

///

Dated: New York, New York
     March 30, 2017

                        Respectfully submitted,

                        DAVIS WRIGHT TREMAINE LLP

                        By: */s/ Lacy H. Koonce, III*
                             Lacy H. Koonce, III
                             Jaya Kasibhatla

                        1251 Avenue of the Americas, 21st
                        Floor
                        New York, NY  10020-1104
                        Phone:  (212) 489-8230
                        Fax:     (212) 489-8340
                        E-mail: lancekoonce@dwt.com
                               jayakasibhatla@dwt.com

                        *Attorneys for Defendants McDonald's*
                        *Corporation, Leo Burnett Company,*
                          *Inc., and Publicis Groupe*

Dated this 30th day of March, 2017.

                    Kaleva Law Offices
                    Attorneys for Defendants McDonald's
                    Corporation, Leo Burnett Company, Inc.,
                    and Publicis Groupe

                    /s/  Kevin Twidwell

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the word count of this brief, excluding the caption, certificates of service and compliance, tables of contents and authorities, and exhibit index, as determined by Microsoft Word is 6389 and otherwise in compliance with Local Rule 7.1(d)(2).

Kaleva Law Offices
Attorneys for Defendants McDonald's
Corporation, Leo Burnett Company, Inc.,
and Publicis Groupe

 /s/  Kevin Twidwell

Certificate of Service

I, the undersigned of Kaleva Law Offices, Attorney for Defendants McDonald's Corporation, Leo Burnett Company, Inc., and Publicis Groupe, hereby certify that on the 30th day of March, 2017, I served a copy of the foregoing *Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint* by CM/ECF to the following:

> Terry Wallace
> P.O. Box 5566
> Missoula, MT 59840
> Attorney for Plaintiff

>                                   /s/ Kevin Twidwell