

**FILED**

**JUL 1 7 2017**

Clerk, U S District Court
District Of Montana
Missoula

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| T-4 CORPORATION, | CV 17–08–M–DLC |
| Plaintiff, | |
| v. | ORDER |
| MCDONALD'S CORPORATION, LEO BURNETT COMPANY, INC., PUBLICIS GROUPE, and DOES 1 through 10, | |
| Defendants. | |

Before the Court is McDonald's Corporation, Leo Burnett Company, Inc., and Publicis Groupe's (hereafter collectively "Defendants") motions to dismiss. Defendants argue that this case should be dismissed because: (1) Plaintiff has failed to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Plaintiff's claim against Publicis Groupe fails pursuant to Rule 12(b)(2) for lack of personal jurisdiction. For the reasons below, the Court grants the motions.

## BACKGROUND

"On a motion to dismiss, material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff."

*Kennedy v. H & M Landing, Inc.*, 529 F.2d 987, 989 (9th Cir. 1976).

Plaintiff T-4 Corporation ("T-4") is a Montana business that sells consumer products, oral hygiene products, decorated apparel, lotions, promotional items, printed matter, and other products.  Defendant McDonald's Corporation ("McDonald's") is a fast-food restaurant that serves food and drink products. Defendant Leo Burnett Company, Incorporated ("Burnett") is a global advertising company based in Chicago, Illinois.  Defendant Publicis Groupe ("Publicis") is a global communications group based in Paris, France, and is the parent organization of Burnett.

McDonald's began using the phrase "I'M LOVIN' IT" in a nationwide campaign in 2003.  McDonald's registered the mark with the United States Patent and Trademark Office ("USPTO") in 2003, and registration was granted on July 26, 2005.  The mark indicates that it is used in "restaurant services," is located in International Class 43, and was first used in commerce on September 23, 2003. McDonald's has three other "I'M LOVIN' IT" trademarks registered in International Classes 29, 30, and 32.

T-4 started using its ♥'n trademark in 2006.  T-4 registered the "♥'n" mark with the USPTO on January 9, 2007, no. 3,197,100, and its "♥'N" mark on March 19, 2013, no. 4,304,841.  T-4 intended for its mark to represent the words "Lov'n"

or "Lovin." T-4 also registered a book entitled "The Lov'n Book for those who do" with the USPTO under federal copyright registration, no. TXu 1-347-097. T-4's claims relate to an advertising campaign initiated by Defendant Burnett on behalf of McDonald's in 2015. The campaign entitled "McDonald's Pay With Lovin' Instant Win Game" (hereafter referred to as the "Campaign") ran from February 2, 2015 to February 15, 2015 and encouraged customers to engage in a "Lovin' Act" such as "calling a loved one" or "blowing a kiss" to receive a free meal from a participating McDonald's restaurant. The Campaign was also aired during the National Broadcasting Company's February 1, 2015 Super Bowl XLIX broadcast. T-4 alleges that McDonald's engaged in direct and in-person customer contact in its restaurants that used stickers and clothing bearing the ♥'N trademark. The sticker at issue includes McDonald's iconic golden arches logo at the top with the following text: "I Paid With ♥'N." T-4 became aware of this alleged misappropriation and issued and served a cease and desist demand letter to McDonald's. McDonald's continued to use the ♥'N mark in its Campaign.

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.*

A defendant may move, prior to trial, to dismiss a complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2).

> The power of a federal court entertaining a case based on diversity of
> citizenship to exercise personal jurisdiction over a nonresident defendant
> turns on two independent considerations: whether an applicable state rule or
> statute potentially confers personal jurisdiction over the defendant and
> whether assertion of such jurisdiction accords with constitutional principles
> of due process.

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir.1977) (citations omitted). The party invoking jurisdiction of a federal court has the burden of establishing jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936). It is the plaintiff's burden to demonstrate facts supporting a finding of jurisdiction to avoid a motion to dismiss. *Data Disc*, 557 F.2d at 1285. "[T]he plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

-4-

1124, 1127 (9th Cir.2010) (citation and quotation omitted).  On considering a motion to dismiss for lack of personal jurisdiction, uncontested allegations in the complaint must be read as true and disputes of fact are resolved in favor of the plaintiff.  *Id.*

Under Montana law, courts follow a two-step test to determine whether personal jurisdiction exists.  *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015).  Courts first determine whether jurisdiction exists under Montana's long-arm statute, Montana Rule of Civil Procedure 4(b)(1).  *Id.*  If personal jurisdiction exists under that first step, courts then consider "whether the exercise of personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause."  *Id.*

## ANALYSIS

## I.     Personal Jurisdiction

Montana Rule of Civil Procedure 4(b)(1) incorporates principles of general and specific personal jurisdiction.  *Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 194 (Mont. 1990).  The first sentence of the rule expresses the principle of general personal jurisdiction by inquiring as to whether a party is "found within" Montana.  *Id.*  A party is found within Montana if it is physically present in the state or if its contacts with the state are "so pervasive that it ... may be deemed to

be physically present." *Id.* A nonresident defendant must maintain "substantial" or "continuous and systematic" contacts with Montana to be found within the state. *Id.*

The claim for relief may arise from any of the acts listed in Rule 4(b)(1)(A–G) and create specific jurisdiction for the purpose of litigating that particular claim. *Milky Whey, Inc.*, 342 P.3d at 17. Thus, absent general personal jurisdiction, courts in Montana may exercise specific jurisdiction over any person

> as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
> (A) the transaction of any business within Montana;
>
> (B) the commission of any act resulting in accrual within Montana of a tort action;
>
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
>
> (D) contracting to insure any person, property, or risk located within Montana at the time of contracting;
>
> (E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;
>
> (F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or
>
> (G) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1).

Publicis is not a Montana corporation, has never physically entered

Montana, and has not purchased or sold products in Montana. It does not conduct

substantial, systematic, or continuous activities in Montana. Thus, Publicis cannot

be "found within" the state as contemplated by the general jurisdiction of Mont. R.

Civ. Pro. 4(b)(1).

Publicis is also not subject to specific personal jurisdiction in Montana.

Publicis has never transacted any business in Montana, did not commit any act in

Montana that resulted in a tort action, does not own or possess property in

Montana, did not contract to insure anyone in Montana, did not contract for

services in Montana, did not act as a director, manager, or trustee of a corporation

in Montana, or act as a personal representative of an estate in Montana. Publicis is

wholly unrelated to Montana and has not reached into Montana or availed itself of

the privilege of doing business in this forum. Therefore, Montana has no specific

jurisdiction over Publicis.[1]

---

[1] T-4 responds to Publicis's personal jurisdiction argument by contending that Publicis voluntarily appeared and subjected itself to the jurisdiction of this court. (Doc. 22 at 9.) For support, T-4 relies on *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976). This case is no longer good law. Further, the Ninth Circuit found that while "Defendants can waive the defect of lack of personal jurisdiction by appearing generally," they do not subject themselves to personal jurisdiction by first challenging the defect in a preliminary motion. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). Here, Publicis did appear, but did so solely to challenge personal jurisdiction in its motion to dismiss. Thus, this argument is without merit.

To the extent that T-4 pleads any facts related to Publicis being the "alter-ego" or "parent company" of Burnett, that theory is also without merit. To pierce the corporate veil and hold Publicis liable, T-4 must plead sufficient facts to establish the test for agency and alter ego. Montana has developed a two-prong test to determine whether the corporate veil can be pierced: "[f]irst, the defendant must be shown to be an alter ego, instrumentality, or agent of the corporation," and "[s]econd, evidence must exist that the corporate entity was used as a 'subterfuge to defeat public convenience, justify wrong or perpetrate fraud.'" *Montana Trucks LLC v. UD Trucks N. Am. Inc*, No. CV 12-23-M-DWM, 2016 WL 7388303, at *2 (D. Mont. Dec. 20, 2016) (internal citations omitted). The only facts pled by T-4 are that "Publicis Group is a parent organization of Burnett." (Doc. 1 at 2.) T-4 did not respond to Defendants' argument regarding piercing the corporate veil in its response brief. Thus, T-4 has not supplied the Court with sufficient facts to prove that piercing the corporate veil is appropriate here.

Consequently, there is no basis for exercising personal jurisdiction over Publicis, and Publicis will be dismissed as a defendant in this case.

## II.    Trademark Infringement

T-4's first two claims against Defendants are under the Lanham Act, 15

U.S.C. §§ 1114 and 1125(a). T-4 argues that Defendants used the ♥'N mark

without consent and in a manner that is likely to deceive or cause confusion or

mistake. The elements for infringement are the same under § 1114 and § 1125(a).

"To prove a claim of trademark infringement, a plaintiff must show: (1) that

it has a valid, protectable trademark, and (2) that defendant's use of the mark is

likely to cause confusion. *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998

F. Supp. 2d 890, 898 (C.D. Cal. 2014) (citing *Applied Info. Scis. Corp. v. eBay,*

*Inc.*, 511 F.3d 966, 969 (9th Cir.2007)). "A claim of trademark infringement

under § 1114(1)(a) of the Lanham Act requires a trademark holder to demonstrate:

(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged

infringer's use of the mark is likely to cause confusion, or to cause mistake, or to

deceive consumers." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126,

1134 (9th Cir. 2006) (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression*

*I, Inc.*, 408 F.3d 596, 602 (9th Cir.2005)).

"The test for likelihood of confusion is whether a 'reasonably prudent

consumer' in the marketplace is likely to be confused as to the origin of the good

or service bearing one of the marks." *Rearden LLC v. Rearden Commerce, Inc.*,

683 F.3d 1190, 1214 (9th Cir. 2012) (citations omitted).  "The confusion must 'be

probable, not simply a possibility.'"  *Murray v. Cable Nat. Broad. Co.*, 86 F.3d

858, 861 (9th Cir. 1996), as amended (Aug. 6, 1996).

In determining whether confusion between related goods is likely, the

following factors are relevant: (1) strength of the mark; (2) proximity of the goods;

(3) similarity of the marks; (4) evidence of actual confusion; (5) marketing

channels used; (6) type of goods and the degree of care likely to be exercised by

the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of

expansion of the product lines.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341,

348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking

Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).  "The factors are non-exhaustive

and applied flexibly; the *Sleekcraft* factors are not intended to be a 'rote

checklist.'"  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106

(9th Cir. 2016) (quoting *Rearden*, 683 F.3d at 1209).

Here, T-4 proved that it has a protectable mark.  T-4 obtained registration of

its ♥'n mark on January 9, 2007, and its ♥'N mark on March 19, 2013.

However, Defendants argue that despite T-4 owning a valid, protectable

mark, T-4 cannot demonstrate that there is a likelihood of confusion amongst

consumers that rises to the level of trademark infringement.  First, regarding the

strength of the mark, the "I'M LOVIN IT" mark from McDonald's is overwhelmingly more famous than the ♥'N mark of T-4. McDonald's started using its trademark many years before T-4 registered its marks. T-4 has not pleaded sufficient facts to prove that its brand is famous or that an ordinary consumer would know that the ♥'N mark is associated with T-4. Further, Defendants argue that a heart is a geometric shape which makes the ♥'N mark a weak mark; thus, Defendants contend it should be afforded little protection. T-4 disagrees that a heart is a geometric shape. Regardless of whether a heart is a geometric shape, the Court finds that a heart with an apostrophe and the letter "N" is a basic trademark. A heart is a commonly used shape that is included in trademarks in many different consumer markets. After a basic search of the USPTO's website, the Court found hundreds of trademarks that use a heart shape. Thus, without more distinguishing features, T-4's mark strength is weak.

Next, although the ♥'N mark McDonald's used in its Campaign on the stickers is almost identical to T-4's ♥'N mark—despite slight font characteristics—McDonald's and T-4 have entirely different goods and services. McDonald's is a fast-food restaurant chain that sells food and drink. T-4 has not alleged that it sells similar goods, and its registration with the USPTO indicates that its mark is used for cleaning, skin, hair, and beauty products. (Doc. 16-7 at

1–2.)  Therefore, the likelihood that a consumer would confuse the two marks and their origins is very unlikely because the markets for the goods are entirely different.

McDonald's also selected the ♥'N mark for its campaign because of the long-standing use of the company's "I'M LOVIN IT" mark.  Hence, McDonald's intent for using the mark was to promote its own brand.  McDonald's also used its iconic golden arch logo in connection with ♥'N mark on the sticker, so confusion is not likely.  McDonald's also titled its campaign "McDonald's Pay with Lovin' Instant Win Game," which further bolsters that the ♥'N mark related to McDonald's and not T-4.  Consequently, McDonald's argues that no consumer encountering a sticker in connection with a promotion from McDonald's is likely to confuse the abbreviation of "lovin" on that sticker to be confusingly similar to T-4's mark.  The Court agrees.

Finally, the Court finds that T-4 has failed to plead sufficient facts to prove the remaining *Sleekcraft* factors.  T-4 has not indicated that McDonald's and T-4 use the same marketing channels, that T-4 is going to expand its product lines into food and beverage services, or that the competing goods are proximate in a particular consumer market.  Further, T-4 has not presented any evidence of actual confusion regarding the marks from an ordinary consumer.

Consequently, the only *Sleekcraft* factor that weighs in favor of T-4 is the similarity of the marks. Even if the Court gives little weight to the *Sleekcraft* factors, without pleading sufficient facts to suggest that a reasonably prudent consumer in the marketplace would likely be confused as to the origin of the ♥'N mark on McDonald's campaign sticker, T-4 has not stated a trademark infringement claim that is plausible on its face. Plaintiff's trademark infringement claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) are dismissed.

## III. Trademark Dilution

Plaintiff also claims that Defendants violated 15 U.S.C. § 1125(c) and diluted T-4's trademark. "'Dilution' is defined as 'the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). A court may consider

-13-

the following relevant factors to determine whether a mark possesses the requisite

degree of recognition:

> (i) The duration, extent, and geographic reach of advertising and
> publicity of the mark, whether advertised or publicized by the owner
> or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or
> services offered under the mark.
>
> (iii) The extent of actual recognition of the mark; and
>
> (iv) Whether the mark was registered under the Act of March 3, 1881,
> or the Act of February 20, 1905, or on the principal register.

*Id.*

Here, T-4 simply alleges that its mark is "highly distinctive and famous

within the meaning of the statute." (Doc. 1 at 12.) This is insufficient to state a

plausible trademark dilution claim. T-4 has not provided facts establishing any of

the relevant factors under § 1125(c)(2)(A). Therefore, this claim is dismissed.

## III.   Copyright Infringement

Next, T-4 claims that the Defendants infringed its protected copyright and

violated 17 U.S.C. § 106.[2] To state a claim for copyright infringement a plaintiff

must allege (1) ownership of a valid copyright, and (2) copying of a protectable

---

[2] Defendants contend that T-4 mislabeled Count IV as a violation for copyright
infringement under "15 U.S.C. § 1125(d)" and that the proper authority is under 17 U.S.C. § 106.
(Doc. 16 at 26.) The Court agrees.

expression by the defendant that are part of the original work. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). Although T-4 has alleged ownership of a valid copyright regarding "The Lov'n Book (♥'N & ♥'n) for those who do!" which is registered with the US Copyright Office under TXu 1-347-097, it is an impossibility that the Defendants' use of the symbol "♥'N" would implicate any protectable expression of T-4's copyrighted book. McDonald's use of the symbol—the design of the red heart, the fonts used for the apostrophe, and the "N"—is solely a trademark issue. McDonald's did not use any phrase or expression from the book necessary to support a valid copyright infringement claim. Therefore, Count IV is dismissed.

## IV.   Supplemental Jurisdiction Over Plaintiff's State Law Claims

Next, T-4 claims that Defendants' use of the ♥'N mark violates Montana State Unfair Business Practices, and that Defendants are jointly and severally liable for all damages proximately caused to Plaintiff.

Here, the Court must consider whether it should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any other claims T-4 advances under Montana law. Section 1367 provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction

that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a).

However, the district court may decline to exercise supplemental jurisdiction for

various reasons stated in the statute, including when "the district court has

dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. §

1367(c)(3). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary,

and courts may decline to exercise jurisdiction over supplemental state law claims

"[d]epending on a host of factors including the circumstances of the particular

case, the nature of the state law claims, the character of the governing state law,

and the relationship between the state and federal claims." *City of Chicago v. Int'l*

*College of Surgeons*, 522 U.S. 156, 173 (1997).

Because the Court dismissed T-4's federal claims, the Court declines to

exercise supplemental jurisdiction over T-4's state law claims pursuant to 28

U.S.C. § 1367(c)(3). Any claims T-4 may have under Montana law are matters of

state and local concern, and are more properly addressed in the courts of the State

of Montana. Thus, Count V is dismissed.

## V.    Civil Conspiracy

Finally, T-4 alleges that Defendants entered into a civil conspiracy to

unlawfully and unfairly misappropriate the ♥'N mark and enrich themselves by

taking the benefit of the inherent quality, goodwill, prestige, universal recognition,

-16-

acceptance, reputation and benefits of the registered mark.  T-4 further claims that

the Defendants' use of the mark tarnished and diluted the mark's qualities, and

that they are jointly and severally liable for damages.

　　To state a claim for civil conspiracy, a plaintiff must allege the following

elements: (1) two or more persons, (2) with an object to be accomplished; (3) had

a meeting of the minds on the object or course of action; (4) conducted one or

more unlawful overt acts; and (5) damages were the proximate result of the

conduct.  *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998)

(quoting *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993)).

The only facts alleged by T-4 regarding an alleged conspiracy are that "Defendants

entered into a civil conspiracy."  (Doc. 1 at 14.)  Defendants contend that this is

not enough to establish that there was a "meeting of the minds."  T-4 asserts that

the Complaint alleges that Burnett misappropriated its marks and sold them to

McDonald's in a promotional scheme, and that this could not have been done by

accident.  (Doc. 22 at 9.)  Further, T-4 claims that when Burnett "sold" the

campaign to McDonald's, this constituted a meeting of the minds.  *Id.*

　　The court cannot draw a "reasonable inference" from the facts alleged that

the Defendants may be liable for a civil conspiracy because the facts stated by T-4

only allege the existence of an agreement between Burnett and McDonald's to

-17-

publish the Campaign, but do not allege that they had a meeting of the minds to commit an unlawful overt act. Thus, without more, the facts do not present the plausibility of a civil conspiracy. Count VI is also dismissed.

Accordingly, IT IS ORDERED that:

(1)     Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 15) is GRANTED.

(2)     Defendant Publicis Groupe's Motion to Dismiss for Lack of Jurisdiction (Doc. 15) is GRANTED. Publicis Groupe is DISMISSED as a Defendant in this case.

(3)     Plaintiff's Complaint (Doc. 1) is DISMISSED WITHOUT PREJUDICE.

DATED this 17th day of July, 2017.

Dana L. Christensen, Chief Judge
United States District Court

-18-